The 4th District Appellate Court of the State of Illinois has now convened. The Honorable Catherine E. Zienoff presiding. Good morning, counsel. This is case number 4-231092, Thomas D. Brown v. Brendan F. Kelly, Director of the Illinois State Police. Would counsel please identify themselves for the record? Counsel for the appellant first. Yes, my name is Frank Biestjot, and I'm counsel for Brendan Kelly, the Director of Illinois State Police. And counsel for Appellee? Thank you. James Angel or Jim Angel for Appellee Thomas Brown. All right, thank you very much. Counsel, you may begin your argument. Thank you, Your Honor. May it please the court. My name is Frank Biestjot, and I represent Brendan Kelly, the Director of Illinois State Police. This court should reverse the Circuit Court's mandamus order requiring the Illinois State Police to approve Brown's firearm purchases from a federally licensed firearm dealer after federal authorities denied ISP's request to approve Brown's purchase. That is because ISP properly performed its statutory duty as Illinois' NICS point of contact by asking NICS for authorization to approve Brown's purchase and then denying the purchase when that request was denied. To purchase a firearm from a federally licensed dealer, the purchaser must satisfy both state and federal law. As a matter of state law, the purchaser must possess a valid FOID card, and there's no question that that requirement was satisfied here. But the purchaser must also satisfy both state and federal law, which requires that the purchaser must pass a federal background check. And that background check is required under Section 922T of the Federal Gun Control Act, independent of the Illinois FOID Act. In terms of the background check, ISP is the agency responsible for performing the check and then either approving or denying the purchase based on its results. That is because Section 3.1E1 of the FOID Act provides that ISP must act as Illinois' NICS point of contact. Right on this point that you've brought up, I do have a couple questions. We know that Section 3.1C of the FOID Act states, as you mentioned, the Illinois State Police shall approve firearm transfer if the purchaser's receipt of a firearm would not violate state or federal law. Here, the plaintiff had a valid FOID card, we know, and our Illinois Supreme Court had already determined that he was not prohibited from possessing a firearm by federal law. So, why wasn't the plaintiff entitled to mandamus relief? Because the Illinois State Police, wasn't it a non-discretionary duty here to approve his purchase of a firearm? I don't think so, Your Honor, because that position and that argument that Brown puts forward doesn't take into account Section 3.1E1. And ISP does not dispute that under Section 3.1C. It, of course, does have a mandatory duty to approve a purchase if there's no federal law prohibitor. But the question is, when ISP is acting under 3.1E1, what are its obligations and responsibilities? The only evidence in the record indicates that when ISP is acting in that statutory role, it's acting on behalf of NICS and is therefore required to follow federal guidance and guidelines. And the Supreme Court's decision in Brown on the federal law question was not binding on NICS as a federal authority. That's clear from Justice Burke's concurrence in quorum, and I think it's fairly undisputed that a state court's interpretation of federal law is not binding on a federal agency. And so I think, to Your Honor's question as well, although there's sort of a lot of legal background in this case, I think everything kind of boils down to one question, which is really, in this circumstance where ISP is acting as a NICS point of contact while approving or denying a purchase from a federally licensed firearm dealer, and there's a disagreement between an Illinois court and federal authorities on whether a purchaser is federally prohibited, must ISP adhere to NICS's decision or must it adhere to the Illinois court's decision? Well, you're suggesting that ISPA wear two hats then, aren't you? But ISP is a state agency as well, and as a state agency, isn't it bound to follow state law, which would mean the Illinois Supreme Court decision in Brown? Well, it is bound to follow state law, but I think the state law that's applicable here is Section 3.1E1, which directs that ISP must act as a NICS point of contact. By putting that in the statute, the General Assembly, I think, clearly indicated that ISP must perform the obligations and duties of a point of contact, whatever they might be. There are no qualifiers or restrictions in the statute saying that ISP must only perform part of the duties of a NICS point of contact. So, our argument is not that ISP is not required to follow state law. It's that here, the state law is 3.1E1 in conjunction with 3.1C. It's just that the state law at issue here is 3.1E1 in conjunction with 3.1C. Under 3.1C, ISP, of course, shall approve a purchase if it does not violate federal law, state and federal law. But under 3.1E1, ISP is required to act as a NICS point of contact when it's making that determination. If it does not follow the NICS information or the information given to us, are there consequences? There are. Are there not? Yes. I mean, NICS can always revoke ISP's point of contact status and Illinois' point of contact status as being a point of contact state. And I think sort of related to that question and point is that it makes sense that ISP would be required to follow NICS guidance under the statutory scheme because, for example, if this were not a point of contact state, then the decision to approve or deny would be made directly by NICS. So the end result of ISP following NICS's guidance is that a purchaser would receive the same decision in a point of contact state that they would receive in a non-point of contact state. And I think also somewhat relatedly, this puts the focus back sort of on these dual requirements of state and federal law. It's not anomalous, for example, that in this case, Brown has a FOID card, which provides certain rights in and of itself in terms of possession and obtaining a firearm through other means, but that there would be extra requirements through the purchase from a federally licensed dealer because that's going to be true in just about every state. Any state that has a firearm licensing scheme that is as robust or less than Illinois, somebody is going to face those higher federal requirements when they purchase from a federally licensed dealer. For example, if it's a state with no state licensing scheme at all, they still need to pass a federal background check as a matter of federal law. So there's nothing really anomalous, I don't think, about Brown having a FOID card, but not being able to pass a federal background check, even though I do think it's an unusual situation. In most cases, it's not this complicated, I would say. And so I think the argument that plaintiff made and that the circuit court agreed with overlooks ISP's role in Section 3.1E1 and relatedly sort of overreads the Brown decision or misconstrues its effect. In that case, the Supreme Court did decide a question of federal law, but it did so for purposes of answering a state law question, which is whether Brown was entitled to a FOID card. And I think the suggestion in the response brief that ISP's position could create a situation where NICS could direct ISP to revoke a FOID card, for example, that's not accurate because Brown's entitlement to a FOID card is purely a question of state law. That is binding on everybody, ISP and NICS. I guess another argument that I would like to address that was raised in the response brief is the effect of the United States Supreme Court's Rahimi decision on this case. Our view is that Rahimi is not relevant to this appeal for at least two reasons. The first is that Brown is not challenging Section 8.2 of the FOID Act in this case, although there was, you know, in the procedural background, there was a time where the FOID card, his FOID card was suspended pursuant to a order of protection. By the time the court entered the order that's on appeal here, the mandamus order, the order of protection issue had already been resolved. FOID card had been reissued, and the basis for denying the purchase was the California conviction. It was not the order of protection. So I think the whole issue of the order of protection is just not at issue in this case. And relatedly, because the purchase was denied based on a conviction, Rahimi's analysis of the nation's history of prohibitions based on dangerousness findings in the absence of a conviction are not relevant here. There's nothing in Rahimi that says or that suggests that a specific finding of dangerousness must be made in every case where there's a firearm prohibition. In fact, that would be clearly inconsistent with the ruling from Heller, which Bruin did not undermine, that felons, for example, and other classes of people can be denied firearm rights. So Rahimi, I think, is just not relevant here. And I guess one final point that I would like to make, in addition to any questions your answers have or questions your honors have, is the issue of summary judgment. We would ask that, in addition to reversing the circuit court, this court direct the circuit court to enter summary judgment in the defendant's favor. Here, plaintiff filed a motion for judgment on the pleadings, and the defendant filed a cross motion for summary judgment. Plaintiff has not argued that there are any questions of fact that would preclude summary judgment. In fact, by bringing a motion for judgment on the pleadings, I think plaintiff is arguing that his claim presents a pure question of law. And so I think that if this court agrees with ISP on that question of law, then it should remand for entry of summary judgment in defendant's favor, because there are no questions of fact that would preclude summary judgment in that case. And so I guess unless your honors have any further questions, I would stop here and reserve anything else that I'm going to say for rebuttal. Justice Connett, do you have any questions? Justice Stearman? No. Thank you, counsel. You'll have time on rebuttal. Mr. Angel? Thank you, your honor. This is a straightforward. Mr. Brown's opinion is this is a straightforward application of 3.1c, where the grounds for denying a firearm purchase are straightforward. It violates either the Floyd Act, the criminal code, or federal law. And my understanding from going through these briefs and everything else is that ISP is not contesting that Mr. Brown possessing a weapon violates federal law. In fact, it's consistent with federal law. Rather, they're trying to recast this as the Illinois Supreme Court only decided a question of state law, and that's not accurate. Because to get the Floyd car, of course, there is an interpretation of federal law, and that included the restoration provisions. And not only is where I think ISP misstates this is that they're saying that the Illinois Supreme Court's opinion on state law is the only thing that binds them. And that's not accurate. The Illinois Supreme Court's opinion on federal law binds them, and they're supposed to follow that until there's either the Illinois Supreme Court reverses itself or the United States Supreme Court issues a contrary decision. So what Justice Judge Mack said below was told ISP's position was basically on federal law. We don't need to follow the Illinois Supreme Court. We can follow some unnamed person at a federal agency, and that's not accurate. Also, they're basically trying to argue that 3.1e somehow expands the grounds for denial under 3.1c. And the questions Justice Zinoff asked, basically, I think we're right on the mark, which is that basically this is a non-discretionary duty. And essentially, ISP's basically trying to – at different points, they're saying different things as far as who's making the decision, whether they make the decision or whether NICS does. Counsel, good morning. Does ISP wear two hats, as I alluded to earlier? I mean, as a point of contact, a POC, doesn't it have to follow federal guidelines and actually take the information given to us by NICS and follow it? How can it not follow it if it's fulfilling its role under 3.1e1? That's because they have to follow the Illinois Supreme Court's decision that 3.1c is what basically says are the grounds. 3.1 doesn't expand that, and the three grounds are, as I mentioned before, and on the federal law question, the Illinois Supreme Court already told them that it does not violate federal law for Mr. Brown to get his FOIA card. Otherwise, he doesn't have – otherwise, he doesn't get the FOIA card in the first place because that's the part about not being contrary to the federal law. Also, the regulations make – the federal regulations probably resolve a lot of this before there's even issues we don't have to decide. I remember in one of the briefs, probably it was in the trial court, they cited one section of 25 CFR 10 as giving them authority to deny this. But then I looked at this, and it was maybe like one or two sections over where 2510, I think it's F, basically says that not only do they get to decide, but if they make a wrong decision, and it's an aggrieved party, we can bring suit against the point of contacting in court. And so basically, this has already been resolved. But what you're seeing here is besides the fact that they're not following the Illinois Supreme Court opinion is that you're just seeing – this isn't just limited to Mr. Brown. This is a broader problem because I mentioned one other client of mine that had similar problems, and I heard of others, including Ms. Johnson, who was the forerunner of this case of Brown v. ISP, that Supreme Court decision, where it just seems that under the ISP's vision, version of how this works, the NICS could just basically – you could have 100 applicants who get released basically that are found not to be a danger or whatever. And the NICS is just going to come up with some arbitrary proceeding. Okay, this one gets the FOIA – gets their background check approved. This one doesn't. And – Counsel, doesn't that then indicate – doesn't that mean to you then that your cause of action, if you've got one, might be against NICS for the arbitrary nature in which they've reached their decision? But the point that ISP seems to be making is, yeah, we're a state agency. Yes, we're to comply with Illinois state law, but under this particular provision, in order to become a point of contact, we have to accept certain givens. The first one is that since we're doing this on behalf of NICS, we have to comply with their regulations and abide by what they're telling us they're going to do with regard to any particular application. Our Supreme Court may very well say you're supposed to allow the transfer to go through. But NICS has told ISP, as a POC, we're telling you, no, you can't. Well, when they took on that responsibility of becoming a POC, they also took on the agreement that they were going to comply with those federal regulations. And doesn't that just get us to where the whole supremacy issue in the first place? No, Justice DeArmond. No, I would respectfully disagree with that because, for one, the statute where it's making ISP the point of contact basically says it's these three grounds. And we already told you that. The Illinois Supreme Court already told you this doesn't violate federal law. And also, there's a couple other points here that for the agreement delegates, basically NICS is just providing the information. POC, basically, they defer to them on the disqualification. But still, that's per the regulation. So the NICS wouldn't be a bar for that. But also, two other points come up. One is on the whole possibility of revocation, which brings up the audit. Their audit issues were before where they were basically issuing FOID cards to people who they thought simply had batteries and they were really domestic batteries. So this has nothing to do with why they had problems before. Plus, between the regulation and a court order saying this, I think any risk of basically being revoked is overstated. And finally, this is Rahimi and Heller and all the other cases. I add some color to this in that this is a backdrop against the Second Amendment where the U.S. Supreme Court has struck down a lot more restrictions on terms of firearms. And basically, a bureaucratic snafu is not going to be grounds for denying Mr. Brown the right to purchase under the Second Amendment, especially where he's basically been a law-abiding citizen for a substantial period of time. And again, doesn't that address your complaint against NICS? Well, and even if NICS was the contact point, then basically we could be bringing suit against them here. But, of course, they're not the contact point. Well, but your claim is that NICS is unconstitutionally prohibiting your client from acquiring or possessing a firearm in violation of the clear text of the Second Amendment. Well, not like clear text of the Second Amendment, but it's also in contrary to the, I think it was 922.11, where Congress allows relief and the Code of Federal Regulations, which… Because ISP is just fulfilling their responsibility as a point of contact under the agreement they've entered into with the state, with the federal government. Well, but the point of contact is under the regulations who it would be brought against. Also, I'm trying to remember, I know at least in the prior, maybe it was the prior litigation, I might have even in this litigation raised a claim of unconstitutionality and notified the U.S. attorney. And if I did, definitely in the first suit, they expressed no interest in this. And the second suit, they didn't. But part of, I think, where it's getting confused is that the belief that Illinois state courts cannot tell federal authorities what to do, and that's not the case. Also, as I'm reading through this, it was page 4-5 of the reply brief, I'm a little confused as to whether ISP is making the decision or NICS is. At different points, they pass it on. And the question on the FOID card is they really can't answer that. Okay, if NICS can tell them to deny the purchase, why can't NICS say, okay, as a point of contact, you're not even supposed to let people we deem federally prohibited from having a card and possessing a weapon at all. Well, but that's a different issue. The state can decide how much they're going to regulate or not, and they can face that issue if they're confronted head on. Here, the question seems to be, ISP's been told, I mean, I don't have any doubt, they're in a difficult position. The Supreme Court has said X. The trial court has said X. NICS is telling them Y. And under their agreement with NICS, they're supposed to comply with Y. But that would then be saying that unknown persons at NICS, who are not accountable to anyone, as far as I know. There's your complaint. But also, isn't there another, and I'm sorry, I was looking at my notes and I can't find it. In addition to what Justice Dierman said, I believe I read there is another recourse for your client as well to reapply to a different agency to contest this finding. And I apologize. I just can't find the agency right now in my notes. But beyond what Justice Dierman was talking about, I believe there's some additional recourse for your client here. I don't believe there is. I mean, if the Illinois State Police and Attorney General contacted my office and said, hey, can we short circuit this and you talk to this agency with us or give us this information and we'll send it through. Yeah, of course we would comply rather than spending thousands of dollars and hours litigating this. But under the regulation, the 2510F, I believe it was, the point of contact would be who the federal government puts it on, plus ISP saying that NICS isn't even returning their calls anymore. So, but the point is… Did your client fill out another 4473 and submit it and see what happened with the second shot? He might have. I don't know. I know this was on pending for an indefinite period of time. If it is this glitch in NICS, I was wondering whether he submitted another 4473 through his FFL and then see what the results are. I don't think that would have done any good because I remember seeing at one point the ISP saying that basically that they were approving sums such as Mr. Tedisco, but not Mr. Brown, and that they weren't going to approve it and they weren't returning anything else. I know it was on pending for quite a bit, so it's entirely possible that more than one 4473 was submitted, but where NICS is still taking the position that the California conviction is still a bar, I don't see what's going to change there. I did find my note and it's the FBI, I believe, that can investigate this and that would be a possibility for your client as well. Okay, I'm not aware of that, but basically our position is that when the reason for the background check is that Mr. Is that so basically we can determine if there is any information out there, especially any recent information where Mr. Brown possibly shouldn't have a Floyd or shouldn't be possessing weapons, but. That, but basically ISP has the information only only prohibitor that they have is the California conviction. This Supreme Court has already told them that that's not a prohibitor because he was restored and he was restored per. Per the automatic restorations provisions of California law, where, after 10 years, it automatically goes off and the current decision was a situation from 1994, where the court basically said that automatic restoration is is fine. That was a case where they said that the person, even though they may be granted relief under state law, where it was conditional that didn't satisfy federal law. But this is a case where the relief was unconditional, so there's no Karen problem and and Karen was actually a federal prosecution. So, it's, I think it's fairly clear from that decision. Mr. Brown cannot be prosecuted federally. So if he can't be prosecuted federally, I'm not sure how and ICS could could basically validly bar him from from seeking relief. Or from basically being able to purchase the farms. I'm sorry. So, those are the. The only points I have unless there's any other. Oh, and I, I think I didn't make a mention of the point of contact manual, which also basically gives the power to remove this. So, the extent that there's a federal state conflict, I think the regulations and the manual also resolve that. Fairly quickly. Justice connect. Do you have any further questions? No. Justice. Okay, thank you. Counsel for your argument. Thank you. Mr. Thank you. Your honor plan to address 2 quick topics that were raised during counsel's argument, but also happy to talk about any topics. Your honors 1. The 1st is about statutory duty. And then the 2nd is about the nature of this action. In this case, regarding statutory duties. I think justice characterization as wearing 2 hats is accurate. We don't disagree that ultimately is the 1 who pulls the lever or or stamps approve or deny on the application. It ultimately is the body that makes that decision. But when it does, so. Under 3.1, you want it to acting in a certain way and based on all the evidence we have about what it's required to do while acting in that certain way, it's required to follow federal guidance. So, so it's not, we're not saying that nix is the 1 that ultimately approves or denies, but does, but when it does, so it's doing so as a point of contact, which in turns requires it to follow. What nix what nix says, and so that I think then responds to counsel's point that, you know, could nix tell to revoke Brown's Floyd card? The answer is no, because. Is acting as a point of contact only in relation to the approval or denial of a purchase from a federally licensed dealer. It's not acting in that way when it's issuing Floyd cards. So nix would have no input whatsoever on whether or not someone is entitled to a Floyd card. In terms of the nature of the action, I do think it's important to emphasize that this is a mandamus claim brought against the director of the Illinois state police. So, in order to prevail, plan has to show that that that has failed to comply with a clear non discretionary duty. And as justice pointed out, neither nix nor any federal agency is a party to this case. I know there was a lot of discussion about other avenues for relief section 25.10 F of the code of federal regulations title 28 section 25.10 F says that. An individual may bring an action against the state or political subdivision responsible for providing the contested information or responsible for denying the transfer or against the United States as the case may be. Here, the purchase was ultimately denied because nix placed an entry into the next database. This is on paragraph 19 of the earnest affidavit, which is page 264 of the common law record. Nix is the one who, even though California initially put the flag in, nix then ultimately put in that entry into the database itself. So I think that under the federal regulations. There could potentially be an action against nix or a federal agency. And again, this is just this is a mandamus claim. This is not a declaratory judgment action or section 1983 claim or what have you. The question before the court is, is fairly limited. And I think that question is, is whether ISP had a non-discretionary duty under 23 point under 3.1 E1 to approve this purchase, even though, while acting as a point of contact, even though nix had denied it authorization to do so. We think that the answer is no, and therefore ask this court to reverse the circuit court, and in doing so, direct the court to enter summary judgment in defendant's favor. And unless you have any further questions, I'll end there. Thank you, Justice. Can I add anything further? No. Justice DeArmond. Thank you counsel for your arguments this morning. The court will take the matter under advisement and render a decision in due course. The proceedings this morning stand in recess.